**CLEVELAND TRUST CO., Trustee etc., Appellee, v. MANCHESTER et al, Appellants, et al.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23231.   Decided July 27, 1955.

Baker, Hostetler & Patterson, Cleveland, for appellee.

Van Aken, Whiting, Arnold & Nash, Cleveland, Amerman, McHenry, Jones & Morgan, Canton, for appellants Ida Austin Manchester. et al.

Jamison, Ulrich, Hope. Johnson & Burt, Cleveland, for appellant Fred O. Burkhalter, Guardian ad Litem for Robt. Mack, a minor, etc., et al., etc.

Arter, Hadden, Wykoff & Van Duzer, Cleveland, for appellants Ida Stewart Austin, et al.

(STEVENS, PJ, HUNSICKER, J, DOYLE, J, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

The Cleveland Trust Co., in its capacity as trustee under two substantially identical trusts created by Samuel and Sarah J. Austin, during their lifetimes, brought this action in the Common Pleas Court of Cuyahoga County, in which it prayed for instructions in respect to the settlement of several controversial matters, included in which were instructions relative to certain first rights of purchase of corporate stock allegedly granted by the trust instruments to the wife and children of Wilbert J. Austin, deceased, the only son of five children of the settlors.

The trust instrument of Sarah J. Austin contains the following provisions pertinent to the issues:

"I do further provide that in the event that the trustee, after my decease, proposes to sell, or otherwise dispose of, or to distribute any part or all of the capital stock of the Austin Company which may be part of the trust estate, the trustee shall, before otherwise selling, disposing of or distributing the same, offer such stock to my son, Wilbert J Austin. or if he be deceased, to his executor or administrator, or if there be no such executor or administrator then acting, to his wife and children, or such of them as may then be living, at such price and upon such terms

and conditions of sale as the trustee, in its discretion, may deem proper, it being my hope and belief that in such event the trustee and my son, or his said representatives, as the case may be, will be able to come to such an agreement as will prove mutually satisfactory, and that in any case my said son, or his said representatives, shall have the first right to purchase such stock so to be sold, disposed of or distributed under any of the terms of this instrument, at as favorable a price and upon as favorable terms as the trustee shall offer to anyone else, and in case of his purchase of any of such stock which may be distributed to any of said daughters at any time hereunder, at such price as the trustee and he may agree upon, or failing so to agree, then at the price determined in the manner hereinafter set forth with respect to fixing the price for the purchase by him of any real estate he and I may own jointly or as tenants in common or otherwise.

"In the event that my said son, or his said representatives, as the case may be, shall be unwilling to purchase some or all of the stock at a price and upon terms and conditions deemed proper by the trustee, the trustee shall be free to sell the said stock to such other party or parties as the trustee may see fit, at and upon the said price and terms deemed proper by the trustee, and in case at the time hereinbefore fixed for the distribution to any of my children and/or their issue or other representatives hereinbefore provided, any of the stock of the Austin Company shall remain in the trust estate unpurchased by my son or otherwise unsold or undisposed of, the trustee may distribute such shares in kind to the distributees * * *.

"I also direct that my son, Wilbert J. Austin, shall have the sole option and right for six months following my decease to purchase the City Mill property, so-called, being premises now occupied by the Austin Company, and also any interest which I may own or which may be held hereunder jointly or as tenant in common with him or his wife, being that interest in the premises now known as the office property and the Bliss Mill property, occupied by the Austin Company, and in the event he so elects to purchase the said parcels, or any of them, he shall pay therefor such sum as he and the trustee may agree upon, and in the event of their failure so to agree, then such price shall be determined by arbitration as follows:

"Three arbitrators shall be chosen, who shall name such price, one arbitrator to be selected by the trustee, one by my son, Wilbert J. Austin, and the third by the remainder of my children. The amount thus determined shall be considered the price and value of the said premises which my son shall pay to the trustee therefor. The terms of payment shall be such as shall be determined to be fair and just by said trustee.
"* * *

"I direct that such of my daughters, viz.: Ida Austin Manchester, Florence Austin Shimmon, Lillian E. Ferguson, and Ethel Austin Whiting, who may survive me, and in the order so named, shall have the right and option to purchase, for six (6) months following my decease, the real estate in Willoughby, Ohio, now occupied by my husband and myself as a homestead, at such price as may be agreed upon by the daughter so purchasing and the trustee, and in event of their failure to agree, then

such price shall be determined by arbitration precisely as hereinbefore provided in respect of the purchase of real estate jointly owned by my said son, except that the daughter so purchasing, instead of my son, shall name one arbitrator. The terms of such purchase shall be the same as above provided for a purchase of real estate by my said son, and the daughter so purchasing shall have the same right above provided for my son in respect of having her share of the trust estate applied toward the purchase price."

The Samuel Austin trust, in so far as the terms thereof apply to the questions presented, is identical with terms heretofore set forth in the instrument of his wife, Sarah J. Austin.

The trustee in its petition alleges:

"4. That under said trust agreements certain provisions are made extending to the wife and children of Wilbert J. Austin, deceased, a prior right of purchase of shares of the Austin Company held in said trusts upon sale or distribution of said shares of the Austin Company; that stock of the Austin Company, both common and preferred, constitutes the principal asset of said trusts; that under said trust agreements * * *, a life estate was created for each of the five children of settlors with general testamentary power of appointment in each of said children of his or her share, and in default of the exercise of said power, a gift of the remainder to the issue of each said child of said settlors; that Wilbert J. Austin died without exercise of his testamentary power of appointment and each of the four daughters released said power for tax reasons; that in accordance with the terms of said trusts, the share of Wilbert J. Austin therein held for his benefit during his lifetime, including common and preferred stock of the Austin Company, was distributed to his children following his decease in December of 1940 and that since said date no shares of the Austin Company have been sold or distributed from said trusts.

"5. That Florence Austin Shimmon, a daughter of the settlors and a life beneficiary under said trusts, died on or about June 6, 1951, leaving as her sole children two daughters, namely, the defendants, Florence Shimmon DeGuerre and Katherine Shimmon Crowther; that since the death of Florence Austin Shimmon, the widow and children of Wilbert J. Austin, deceased, on their part have demanded that plaintiff fix a price upon both the common and preferred shares of the Austin Company which are otherwise distributable to the said daughters of Florence Austin Shimmon, deceased, as her issue, and proceed with arbitration if it becomes impossible to work out an agreement upon price between the trustee and said widow and children of Wilbert J. Austin, deceased; that the widow and children of Wilbert J. Austin, deceased, have further requested withholding of distribution of dividends upon shares of the Austin Company to the daughters of Mrs. Shimmon upon the theory that said dividends will follow the purchase of said shares when, as and if said purchase is made; that on the other hand, the two Shimmon daughters have indicated opposition to the alleged right of first purchase in the Wilbert J. Austin family and have insisted upon immediate distribution to them of the dividends accruing since the death of their

mother upon the Austin Company stock allocable to Florence Austin Shimmon's life interest; that plaintiff has distributed to the two Shimmon daughters their share of the trust assets allocable to Mrs. Shimmon's life estate other than stock in the Austin Company but that, because of the conflicting claims of the defendants herein, plaintiff is not able to make distribution or otherwise proceed as to the shares of stock in the Austin Company; that large dividends are accumulating which should be distributed to the rightful owners of them at an early date, and that complex income tax problems for the trusts and the individuals who may ultimately be held entitled to said dividends have arisen and will become more involved the longer said dividends are obliged to accumulate. "* * *

"7. That in connection with the administration of the trusts above mentioned, and particularly since the death of Florence Austin Shimmon, deceased, serious questions have arisen which require the plaintiff, as trustee, to ask the instruction and direction of this court; that in preliminary discussions with representatives of the Wilbert J. Austin family, it has become evident that if the prior right of purchase of the Austin Company shares, both preferred and common, exists with reference to the shares allocable to Mrs. Shimmon's life estate, then agreement between the trustee and the Wilbert J. Austin family appears unlikely, either as to the preferred or the common, and that the questions submitted by the plaintiff as trustee under said trust agreements are as follows:

"(a) Do the widow and children of Wilbert J. Austin have a first right of purchase upon any or all shares of the Austin Company sold or distributed by the trustee in the administration of said trusts, including shares distributable in kind upon the death of one of settlors' daughters?

"(b) Are shares of the Austin Company which are distributable upon the death of one of settlors' daughters to her issue in kind distinguishable from or in a different category than shares '* * * distributed to any of said daughters at any time * * *'?

"(c) Does the arbitration provision set out for fixing the price for the purchase of certain real estate apply to stock distributable in kind upon the death of one of settlors' daughters?

"(d) What procedure shall arbitrators follow in the course of their consideration, if any; as of what date shall they fix a value; how shall they vote; will a majority vote control; how shall they be compensated; and when, if at all, does a decision of said arbitrators become binding upon the parties to said arbitration?

"(e) Who is entitled to dividends accruing after the death of one of settlors' daughters upon the common and preferred stock of the Austin Company held in said trust but distributable in kind to the issue of such deceased daughter?

"(f) What rate of interest, if any, should be paid upon the purchase price, and for what period by the widow and children of Wilbert J. Austin, if the dividends mentioned in (e) above become payable to them?

"(g) When shall the dividends mentioned in (e) above be distributed?"

Pursuant to trial and judgment in the Court of Common Pleas of Cuyahoga County, separate appeals have been perfected to this court on questions of law and fact. We now entertain the action for trial de novo.

The members of this court have examined with great care the several hundreds of pages of briefs, in the light of the evidence presented. While a detailed analysis of the arguments would perhaps be of academic interest, it is the purpose of this court, in view of the fact that the case has been heard de novo and there will undoubtedly be a request made for separate findings of fact and conclusins of law, to instruct the trustee without extended comment. The respective claims of the adversaries are well known to counsel and need not be here repeated.

In answer to requests:

(a) Under the terms of the instruments the widow and children of Wilbert J. Austin have the first right to purchase any of Austin Company stock to be sold or distributed by the trustee in the administration of the trusts, and such right extends to shares distributable in kind upon the death of any one of the settlors' daughters.

(b) The shares of the Austin Company which are distributable upon the death of one of the settlors' daughters to her issue are not placed in a different category than shares distributed to any of the daughters at any time. The right to purchase applies to any circumstances under which the trustee might sell or distribute the stock.

(c) The arbitration provision set out for fixing the price for the purchase of certain real property specified in the instruments, equally applies to stock distributable in kind upon the death of one of the settlors' daughters.

The instruments provided that the trustee should "offer" the stock to the settlors' son, or, if he be deceased, to his legal representative, or to his wife and children, "at such price and upon such terms and conditions of sale as the trustee in its discretion may deem proper."

It may be assumed, we think, that the settlors were entirely familiar with the duties of a trustee, included in which is the duty to conduct the affairs of his relationship with a view to the best interests of the beneficiaries; and when they specified that the trustee could sell the stock at a price that it, the trustee, "shall deem proper," in its discretion (not abuse of discretion), the power was given the trustee to sell at a price reflecting a fair and reasonable value; and if then Wilbert J. Austin or his family failed to agree with the price fixed by the trustee, resort should be had to arbitration.

The settlors were important persons in the business world, and it is reasonable to believe that they anticipated a situation in which two thoroughly honest and competent individuals could not mutually agree upon the fair and reasonable value of an unlisted stock. They solved this problem by providing for arbitration.

(d) The word "arbitration" has been used in this decision. It is used in a loose sense. Strictly speaking, we are not dealing with arbitration, but with a closely related subject, that of the determination of the value of property by appraisement. If such "arbitrators" or appraisers, are selected, it would be their duty to conduct a hearing, in which they

should examine into the question of the fair market value of the stock. This market value of the stock should be established as of the time of the death of the settlors' daughter, Mrs. Shimmon. They should have for their consideration the financial state of the company, its earnings, the book value of the stock, the corporation's good will, and the many other factors which enter into a determination of the fair market value of corporate stock. We have thus detailed above only some of the factors which should be taken into account in determining the value of this stock. These appraisers should have the benefit of the testimony of experts in the field of corporation finances and corporate investments.

The statutory rules for arbitration are not here involved. The "arbitrators" must as a unit determine the valuation. The power conferred by the instruments is as follows: "Three arbitrators ·shall be chosen, who shall name such price * * *. The amount thus determined shall be considered the price and value * * *." This matter we hold to be within the rule that, "where a power or authority is entrusted to several persons to be exercised in relation to matters of a private nature, as distinguished from those of a public character, all must concur in order to its valid execution." **Lowe v. Brown, 22 Oh St 463, at p. 466.** It is obvious that a "majority vote" will not control.\*

In the absence of any provision in the instrument specifying the persons who shall pay the "arbitrators," principles of equity and fair dealing would, we think, require that each arbitrator be paid by those who made the selection. The compensation of the arbitrator selected by the trustee should be charged to the trusts.

A decision of the "arbitrators," as to the value of the stock, shall be binding as fixing the price at which the Wilbert J. Austin family may purchase the stock.

(e) The right to purchase the shares in controversy at a price to be fixed, came into existence at the time of the death of Mrs. Shimmon. Until the shares are purchased upon a satisfactory price under the terms of the trust instruments, the right to the dividends in the interim are in the equitable owners, and do not follow the stock into the hands of possible purchasers who may or may not find the price satisfactory and who may or may not purchase the shares.

(f) Deciding (e) above in the manner indicated, the answer to this question is obvious.

In further consideration of the case before us, The Cleveland Trust Co. is authorized to secure the assistance and advice of independent experts in its work of administering these trusts. Experts so employed should be paid reasonable fees out of the trust estate. It is further entitled to a 5% fee on gross income received by it, including the now-accrued dividends on the Shimmon stock. The expenses incurred in this litigation, including counsel fees, court costs, and other necessary expenses, shall be borne by the trust estates.

A decree shall be drawn incorporating the above conclusions.

STEVENS, PJ, HUNSICKER, J, concur.

---

\*For subsequent opinion in this case modifying these statements see post pg. 513,